UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT WOLF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-CV-1494 NAB |
| ) | |
| KILOLO KIJAKAZI[1], ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Scott Wolf's appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 10.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.    Background**

On January 18, 2019, Wolf applied for DIB, alleging that he had been unable to work due to disability since November 30, 2018. (Tr. 190-191.) Wolf alleged disability due to a spinal disc herniation and depression. (Tr. 211.) His application was initially denied (Tr. 107-112) and he filed a Request for Hearing by Administrative Law Judge (Tr. 113-114.) On March 23, 2020, Wolf

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

amended his alleged onset date to April 30, 2019 (Tr. 206.) On March 24, 2020, the ALJ held a hearing on Wolf's claim. (Tr. 67-89.) Wolf was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on April 17, 2020, the ALJ found Wolf was not disabled as defined in the Act from the amended alleged onset date through the date of the decision. (Tr. 48.) Wolf filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 184-186.) While the claim was pending before the Appeals Council, Wolf submitted additional evidence. The Appeals Council considered Wolf's submitted medical records dated April 16, 2020 but found the records did not show a reasonable probability that they would change the outcome of the decision. (Tr. 2.) The Appeals Council declined to consider medical records dated June 4, 2020 to September 17, 2020, finding that the evidence did not relate to the time period at issue. *Id.* On September 26, 2020, the SSA's Appeals Council denied Wolf's request for review, and adopted the ALJ's decision in full. (Tr. 1-7.)

At the hearing before the ALJ on March 24, 2020, Wolf testified as follows. (Tr. 67-89.) He used to work as a cashier at his father's retail hardware business. His job history also includes work as a union laborer and doing street maintenance. He now has cervical and lumbar spine issues that prevent him from doing what he wants. He has constant pain in his cervical spine. It feels like a cramping and causes daily headaches. For the headaches, Wolf takes ibuprofen or pain medications. There is no specific act that makes the cervical pain worse. Aside from the headaches, he will occasionally have a weakness in the arms when he tries to lift things. He also has pain in his lower back that radiates down through his groin and into his legs. He testified that there is nothing he can do to make the pain better, but also testified varying positions sometimes can provide temporary relief. Wolf testified that he can only stand or walk for less than ten minutes

before he starts to feel the lower back and leg pain. He can sit for maybe ten to fifteen minutes before he begins to feel pain in his cervical spine or in his back.

Wolf testified that his doctors recommend ibuprofen and Advil for the pain, and there is nothing they can do to help him. Wolf had two previous surgeries in the same area for his degenerative disc disease, and he may require an additional surgery but is waiting on doctors' appointments. He also had a previous surgery on his cervical spine, but he does not think his doctors will do additional surgery in that area.

Wolf's typical day consists of varying positions from the bed, to the couch, to the floor. He also takes short walks out his front door and then back in. He estimates he spends 75% of the day on the floor. He watches television or stares out the window. He occasionally goes to the grocery store. He used to be able to cut grass and do carpentry and concrete work but is no longer able. He has not done housework or chores for about a year because his pain became worse in 2019. He has given up on trying to lift things heavier than a gallon of milk. He once tried to help his son hook up a trailer and pulled his back when he bent over to reach for the jack. He testified he was in bed for four days following the incident.[2] He does not have any problems with personal care (e.g., shaving, getting dressed and ready in the morning), aside from a general lack of motivation due to depression.

**II.     Standard for Determining Disability Under the Act**

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be

---

[2] Wolf's medical records from a January 27, 2020 doctor's visit reflect that he was in bed for three days the week before his appointment after hooking up a trailer. (Tr. 79, 652.)

"of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

**III.     The ALJ's Decision**

Applying the foregoing five-step analysis, the ALJ here found that Wolf met the insured status requirements of the Social Security Act through December 31, 2023, and that he had not engaged in substantial gainful activity since April 30, 2019, the amended alleged onset date. (Tr. 41.) Next, the ALJ found that Wolf has the following severe impairments: cervical degenerative disc disease with headaches, lumbar degenerative disc disease with radiculopathy, status-post non-ST elevated myocardial infarction (NSTEMI) and microvascular angina. (Tr. 41.) The ALJ found Wolf's non-severe impairments included status-post hernia repair surgery, status-post colon cancer with resection, history of transient ischemic attacks (TIAs), carpal tunnel syndrome (CTS), and depression. (Tr. 45.)

The ALJ determined that Wolf did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Wolf had the residual functional capacity to perform light work with additional limitations. He can occasionally reach overhead, and frequently reach in other directions bilaterally. He can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, and can balance, stoop, kneel, crouch and crawl occasionally. He can never work at unprotected heights, never around moving mechanical parts, and in vibration occasionally. He should work in an environment with no more than a moderate noise level. (Tr. 43.) Based on the foregoing, the ALJ found that Wolf was capable of performing his past relevant work as a cashier. (Tr. 46.) The ALJ relied on the vocational expert's testimony in finding Wolf's past relevant work was best described as a general hardware sales person (Dictionary of Occupational Titles (DOT) No. 279.357-050, light exertion level, Specific Vocational Preparation (SVP) 4).

5

Wolf was 52 years old, categorized as an individual closely approaching advanced age, on the alleged disability onset date. He has at least a high school education and is able to communicate in English. The ALJ found transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules framework supported a finding that Wolf was "not disabled" whether or not he had transferable job skills. (Tr. 47.) Based on the foregoing and the testimony of the vocational expert, the ALJ found that Wolf was capable of performing the following jobs, all of which have a light exertional level and are SVP 2: cafeteria attendant (DOT No. 311.677-010, approximately 30,000 jobs existing nationally); sales attendant (DOT No. 299.677.010, approximately 292,000 jobs existing nationally); and housekeeper (DOT No. 323.687.014, approximately 220,000 jobs existing nationally). (Tr. 298.) Therefore, the ALJ ultimately concluded that Wolf was not under a disability, as defined by the Social Security Act, from the amended alleged onset date of April 30, 2019 through the date of the decision, April 17, 2020. (Tr. 48.) Wolf has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the SSA.

**IV.    Standard for Judicial Review**

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. §§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.      Discussion**

The Court first determines what evidence to consider. After the ALJ issued her decision on April 17, 2020, Wolf requested review by the Appeals Council and submitted additional evidence. When new and material evidence is submitted to the Appeals Council,

> [t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). The Eighth Circuit has explained that in this situation,

7

> The newly submitted evidence is to become part of what we will loosely describe here as the "administrative record," even though the evidence was not originally included in the ALJ's record.  If the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new and material.  If, as here, the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision.

*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992) (internal citation and quotation omitted).

Here, Wolf submitted to the Appeals Council records from both before and after the ALJ's April 17, 2020 opinion. For the records reflecting treatment *after* the ALJ issued her decision, the Appeals Council stated that the evidence does not relate to the time period at issue and therefore does not affect the decision about whether Wolf was disabled beginning on or before April 17, 2020. (Tr. 2.) The undersigned agrees that these records are not material and will not consider them as a basis for remand.[3]

The additional records that the Appeals Council suggests reflect treatment *before* the ALJ's decision include four pages from Neurosurgery and Neurology, LLC dated April 16, 2020. (Tr. 32-33, 55-56.) The Appeals Council found that this evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision.

The Appeals Council asserted proper bases of denial under 20 C.F.R. § 404.970(a)(5) to demonstrate that it considered the new evidence. Because the Appeals Council considered the evidence but declined to review the case, the records dated for before the ALJ's decision (Tr. 32-33, 55-56) shall be considered in determining whether substantial evidence in the current administrative record supports the ALJ's decision.

---

[3] These new records include 16 pages from St. Luke's Hospital dated June 4, 2020 through September 17, 2020 (Tr. 8-23) and two pages from Neurosurgery and Neurology, LLC dated June 4, 2020 (Tr. 30-31, *see also* 34-35).

8

The Court now turns to Wolf's arguments. First, Wolf argues that the ALJ exceeded her authority by inferring limitations from the raw medical findings with respect to Wolf's physical functioning. After a review of the record, the Court finds this argument is without merit. Although an ALJ may not simply draw her own inferences from medical reports, it is the role of the ALJ to "determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). *See also Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing subjective complaints). Here, the record shows that the ALJ properly based her decision on all of the evidence, including the objective medical evidence, the medical opinion evidence, and the non-medical evidence.

Second, Wolf argues that the ALJ did not conduct a proper analysis of Wolf's subjective complaints of pain, as required by *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and related case law and regulations. *See* 20 C.F.R. §§ 404.1529(c); *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *7-*8 (Oct. 25, 2017). After a review of the record, the Court finds that the ALJ conducted an adequate analysis of the credibility of Wolf's subjective complaints, supported by substantial evidence and consistent with the governing regulations. The Court notes that the ALJ apparently gave significant weight to Wolf's complaints of pain, restricting him to light work with additional limitations, including limitations beyond those recommended by the only opinion in the record regarding physical RFC. At the hearing and in her decision, the ALJ added additional and more severe manipulative and postural limitations than were recommended by state agency physician John Duff, M.D., who reviewed Wolf's records and provided an opinion on May 31, 2019, nearly a year before the

9

hearing. The ALJ explicitly stated the additional limitations were based on Wolf's testimony. Wolf points out that in the ALJ's opinion, she states that despite Wolf's degenerative disc disease, he did not use an assistive device, did not attend physical therapy, did not have epidural injections, did not have chiropractic management, did not use a TENS unit, did not use a back brace, and no treating physical recommended back surgery. The Court agrees with Wolf that this characterization implying a lack of serious treatment fails to acknowledge Wolf's surgical history before his alleged disability onset date. Wolf reported to his physicians and in his testimony to the ALJ that he had previous back and cervical spine surgeries that only provided temporary relief. The record also reflects that Wolf attended physical therapy after his surgeries and saw little to no improvement in his pain. Nevertheless, a review of the decision as a whole demonstrates that the ALJ adequately considered several of the relevant factors in evaluating Wolf's complaints of pain and in making an RFC determination. For these reasons and for the other reasons discussed in Defendant's brief, the Court finds that the ALJ's analysis of Wolf's subjective complaints of pain was supported by substantial evidence. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) ("This court defers to the ALJ's determinations 'as long as good reasons and substantial evidence support the ALJ's evaluation of credibility.'") (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).

As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson*, 402 U.S. at 401; *Pate-Fire*, 564 F.3d at 942; *Estes*, 275 F.3d at 724. So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome,

or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). The material records submitted to the Appeals Council do not overcome the evidence supporting the ALJ's decision.

## IV.   Conclusion

Having reviewed the entire record, the Court finds that the ALJ made a proper RFC determination based on a fully and fairly developed record, and the additional evidence submitted to the Appeals Council does not overcome the evidence supporting the ALJ's decision. Consequently, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (Docs. 1, 25.)

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2022.